IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RANDALL REED,                           )
                                        )
                    Plaintiff,          )
                                        )
v.                                      )          Case No. 2:19-cv-2613-TJJ
                                        )
TRAVELERS PROPERTY CASUALTY             )
COMPANY OF AMERICA,                     )
                                        )
                    Defendant.          )

## MEMORANDUM AND ORDER

This case arises out of a January 24, 2017 car accident between Plaintiff Randall Reed

and an underinsured motorist.  Plaintiff was driving one of his employer's—Atmos Energy

Corporation's ("Atmos")—vehicles at the time of the accident.  Plaintiff settled with the other

motorist for her insurance coverage limits ($50,000).  Plaintiff now seeks to collect an

underinsured motorist ("UIM") payment under Atmos's insurance policy.  Atmos holds this

policy through Defendant Travelers Property Casualty Company of America.

The parties have consented to the exercise of jurisdiction by a United States Magistrate

Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.[1]  Both parties have filed motions

for summary judgment (ECF Nos. 39 and 42).  Plaintiff seeks declaratory judgment in his favor,

arguing that the policy affords up to $1,000,000.00 in UIM coverage.  Defendant asks the Court

to determine that Atmos's policy only affords $50,000 in UIM coverage because Atmos executed

a valid and proper rejection of UIM coverage in excess of the Kansas minimum limits.  For the

following reasons, the Court grants Defendant's motion and denies Plaintiff's.  The Court

---

[1] *See* Notice, Consent, and Reference of a Civil Action to a Magistrate Judge, ECF No. 14.

determines that Atmos effectively limited its UIM coverage to the minimum amount required by Kansas law.  No additional coverage is available to pay Plaintiff above the amount he recovered from the underinsured motorist.

I.    **Facts**

The following facts are harvested from both parties' motions and briefing.  They are either uncontroverted or viewed in the light most favorable to the party opposing the summary judgment motion.[2]  Immaterial facts and factual averments not properly supported by the record are omitted.[3]

Plaintiff was in an automobile accident in Wyandotte County, Kansas, with Susan Prucka on or about January 24, 2017.  Plaintiff alleges that Ms. Prucka caused the accident in whole or in part by her negligence.  He further alleges that as a result of the accident, he suffered physical injury leading to medical expenses, lost wages, and other past and future damages.

Ms. Prucka was insured through Bristol West Insurance Company for $50,000 of liability coverage per person.  Defendant consented to Plaintiff's settlement with Ms. Prucka for her liability limits.  Plaintiff claims, however, that his damages exceed those limits.

At the time of the accident, Plaintiff was driving a truck owned by Atmos.  The truck was garaged and registered in Kansas.  The truck was insured under a commercial automobile policy issued by Defendant to Atmos—specifically, Policy No. TC2J-CAP-152D6628-TIL-16, with a

---

[2] *Scott v. Harris*, 550 U.S. 372, 378 (2007).

[3] *Burkholder v. Gates Corp.*, No. 09-2322-KHV, 2011 WL 124537, at *2 n.2 (D. Kan. Jan. 14, 2011).

policy period of April 1, 2016 to April 1, 2017 (the "Applicable Policy"). This policy insured Atmos's vehicles registered or garaged in Kansas. It provides $1,000,000.00 in liability limits.

The Applicable Policy was renewed from a string of previous commercial automobile policies issued to Atmos. Defendant identified them in detail in its briefing. Here, in the interest of brevity, the Court will not repeat the succession, but will simply state that the policies followed each other without break and with no changes in liability limits, beginning and ending April 1 of each year from at least 2012 through 2017. Each of the successive policies also contained a "Supplementary Schedule" within the policy documents indicating that the limits of UIM coverage in Kansas under the relevant policy were $50,000.

At the time of the accident, Atmos had another policy with Defendant. This second policy, Policy No. TJ-EAP-152D6616-TIL-16, was a self-insured retention excess automobile liability indemnity policy. It applied only to vehicles registered in Louisiana, Mississippi, Tennessee, and Texas. Like the Applicable Policy, Atmos's second policy was also renewed annually on April 1 from 2012 through 2017.

On April 1, 2012, Atmos executed a form to reject UIM coverage above the minimum required by Kansas. This form was called Travelers' Supplementary Commercial Automobile Application for Kansas (the "2012 Kansas Rejection form"). The 2012 Kansas Rejection form stated:

> Uninsured Motorists Coverage provides protection against damages for bodily injury which the insured may be legally entitled to recover from an owner or driver who has no insurance coverage, is a hit and run driver or whose insurer is or becomes insolvent. This coverage includes Underinsured Motorists Coverage for protection against damages for bodily injury which you may be legally entitled to recover from the owner of an insured motor vehicle whose limits of liability are not less than the amount required by law but less than your Uninsured Motorists Coverage limits. Refer to your policy for the prevailing coverage provisions.

> In accordance with the laws of Kansas, your automobile liability or motor vehicle liability policy shall automatically include Uninsured and Underinsured Motorists Coverage, at the same limits as the policy bodily injury liability limits, unless you reject such coverage at the same limits as the policy bodily injury liability limits by selecting different limits as indicated below.  You cannot select limits lower than the minimum Financial Responsibility Limits required by law.[4]

On the form, Atmos elected to limit its uninsured motorist and UIM coverage to the "minimum Financial Responsibility Limits of $25,000 each person and $50,000 each accident, or $50,000 each accident combined single limit (CSL)."[5]  The bottom of the form specified that the rejection selected (or coverage) automatically applied to renewal policies unless Atmos notified Defendant otherwise in writing.[6]  Atmos has never given notification or requested a change to its UIM coverage.  The 2012 Kansas Rejection form had been previously filed with the Kansas Insurance Department and was stamped as "Approved and Filed Sep. 27, 2007, Sandy Praeger, Commissioner of Insurance."

Plaintiff asserts a claim against Defendant for UIM coverage under the Applicable Policy for damages arising out of the accident.  On April 30, 2019, Bradley Jaudon (Defendant's

---

[4] ECF No. 43-13.

[5] *Id.*

[6] The bottom of the 2012 Kansas Rejection form said:

> I understand that the coverage selection or rejection indicated above shall apply to the policy or policies in effect at the time this form is executed and all future renewal policies until I notify the Company IN WRITING of any changes.

> My signature below, and/or payment of any premiums evidences my actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits I have selected.

*Id.*

employee) sent a letter to Plaintiff's attorney advising that the 2012 Kansas Rejection form "reduces the available UIM limits from $1,000,000 to $50,000" and "[g]iven the offset of the $50,000 underlying Bodily Injury settlement, [Plaintiff] would not be eligible for an UIM claim." A little over three months later, Plaintiff filed suit against Defendant, seeking a declaration that "(a) Kansas law applies to the Travelers Policy at issue as it relates to the January 24, 2017 automobile collision; and (b) that the policy at issue affords $1,000,000 in underinsured motorist benefits to Plaintiff as a result of the January 24, 2017 collision."[7]

## II.   Summary Judgment Standard

Under Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Rule 56(c)(1) further provides that the party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"The court need consider only the cited materials, but it may consider other material in the record."[8]   When ruling on a motion for summary judgment, a court must view the evidence and

---

[7] *See* ECF No. 1-1, ¶ 41.

[8] Fed. R. Civ. P. 56(c)(3).

draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.[9]

The moving party bears "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law."[10]  To meet this burden, the moving party "need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim."[11]  If the moving party satisfies its initial burden, the non-moving party "may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."[12]  Summary judgment is not a "disfavored procedural shortcut," but is an important procedure "designed to secure the 'just, speedy and inexpensive determination of every action.'"[13]

## III.    Discussion

The question before the Court is whether Defendant effectively limited its UIM coverage to $50,000 by completing the 2012 Kansas Rejection form, or whether Defendant's coverage at the relevant time was $1,000,000.  To resolve this question, the Court turns to K.S.A. § 40-284.

---

[9] *Scott*, 550 U.S. at 378.

[10] *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[11] *Id.*

[12] *Id.*

[13] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

K.S.A. § 40-284(b) requires that UIM coverage limits equal uninsured motorist coverage. And subsection (a) of the same statute requires that uninsured motorist policy limits must equal liability coverage.  This effectively means that UIM coverage must equal liability coverage—in this case, $1,000,000.  But there is also a limited right of rejection in subsection (c) of K.S.A. § 40-284.[14]  This allows insureds to reject UIM coverage above the minimum limits required by law by rejecting the excess limits in writing.  And if an insured executes a valid rejection, the insurer need not include excess coverage in future policy renewals.[15]  Rejection provisions, however, are strictly and narrowly construed because they detract from the "public policy goals of protecting innocent victims."[16]

Under Kansas law, in order to be valid, "any attempt to reject uninsured [(and, by extension, underinsured)] motorist coverage in excess of the statutory minimum must be 1) in writing, as required by § 40-284(c), and 2) the product of an affirmative, unequivocal act specifically effectuating the insured's rejection of excess coverage."[17]  To evaluate the validity of

---

[14] *Mitchell v. Liberty Mut. Ins. Co.*, 24 P.3d 711, 715 (2001) ("K.S.A. 40–284(c) provides that the insured has the right to reject uninsured and underinsured motorist coverage in excess of the minimum required by law, i.e. $25,000 per person/ $50,000 per accident or $50,000 single limit, by giving the insurance company written rejection of the excess."); *see also* K.S.A. § 40-3107.

[15] *Mitchell*, 24 P.3d at 715 ("Further, the statute provides that after a valid rejection, the insurer need not include excess insurance in any subsequent policy of the insured unless the insured specifically requests such excess coverage in writing.") (citing K.S.A. § 40-284(c)).

[16] *Larson v. Bath*, 801 P.2d 1331, 1333 (Kan. App. 1990).

[17] *Stemple v. Zurich Am. Ins. Co.*, 584 F. Supp. 2d 1304, 1310 (D. Kan. 2008) (quoting *Bishop v. Empire Fire & Marine Ins. Co.*, 47 F. Supp. 2d 1300, 1306 (D. Kan. 1999) (internal quotation marks omitted)).

a rejection form, Kansas courts have applied the doctrine of operative construction.[18]  This
means that the Court will give deference to the interpretation of a statute by an administrative
agency charged with enforcing that statute.[19]  Here, the Court has the benefit of the Kansas
Insurance Department's Bulletin 1981-20.  This Bulletin "interpreted K.S.A. § 40-284 and
provided a sample written rejection form, which the agency believed would satisfy the
requirements of K.S.A. § 40-284(c)."[20]  Even more helpful is the fact that the Kansas Supreme
Court has relied on Bulletin 1981-20.[21]

The sample rejection form simply reads:

**KANSAS UNINSURED MOTORISTS COVERAGE EXCESS LIMITS
REJECTION**
**(Acknowledgment of Coverage Rejection)**

I acknowledge that I have been provided Uninsured Motorists Coverage and, in
addition, I have been offered the following in accordance with the law of the State
of Kansas: I have been given the opportunity to purchase Uninsured Motorists
Coverage (including Underinsured Motorists Protection) equal to my limits of
liability for bodily injury or death, and instead I select lower limits of
$25,000/$50,000.

I understand and agree that this acknowledgement of the coverage rejection shall
be applicable unless I subsequently request such coverage in writing.

MAKE OF VEHICLE _____YEAR ____VEHICLE I.D. # _____

_____
(Date)

_____

---

[18] *See McTaggart v. Liberty Mut. Ins.*, 983 P.2d 853, 856 (Kan. 1999); *Stemple*, 584 F. Supp. 2d
at 1312.

[19] *Stemple*, 584 F. Supp. 2d at 1312 (quoting *State Dep't of SRS v. Pub. Emp. Relations Bd.*, 815
P.2d 66, 69 (Kan. 1991) (internal quotation marks omitted)).

[20] *Id.*

[21] *See McTaggert*, 983 P.2d at 857.

_____
(Insured's Signature)[22]

With this guidance in mind, the Court evaluates whether Atmos's rejection of excess coverage was valid. If it was, then the UIM coverage was limited to $50,000, which is equal to the liability limits of Ms. Prucka's policy. No UIM coverage would be available for Plaintiff.[23]

In this case, there is a written rejection—meeting K.S.A. § 40-284(c)'s "in writing" requirement. Atmos also renewed its coverage with Defendant every year, without lapse, from 2012 through the year of the Applicable Policy. This makes the Applicable Policy a "subsequent policy" under the statute.[24] And Atmos has not requested a change in UIM coverage since executing the rejection in 2012. Facially, then, the Atmos rejection of excess UIM coverage is valid.

Plaintiff makes four primary arguments why the rejection should be ruled invalid: (1) The rejection form is ambiguous because Defendant did not obtain a rejection letter for each policy; (2) the rejection form is ambiguous because it does not specifically identify the policy to which it applies or the vehicles that are covered; (3) the rejection form is invalid because it is not

_____

[22] *Stemple*, 584 F. Supp. 2d at 1312 (quoting Kan. Ins. Dep't Bulletin 1981-20, at 15 (Sept. 16, 1981)).

[23] *See Halsey v. Farm Bureau Mut. Ins. Co.*, 61 P.3d 691, 697 (Kan. 2003) (holding that under Kansas law, when the UIM coverage equals or does not exceed the tortfeasor's liability coverage, no UIM coverage exists); *see also* K.S.A. § 40-284(b).

[24] K.S.A. § 20-284(c) ("Unless the insured named in the policy requests such coverage in writing, such coverage need not be provided in any subsequent policy issued by the same insurer for motor vehicles owned by the named insured, including, but not limited to, supplemental, renewal, reinstated, transferred or substitute policies where the named insured had rejected the coverage in connection with a policy previously issued to the insured by the same insurer.").

incorporated into the Applicable Policy; and (4) the rejection form's purported application to "the policy or policies" in effect at the time of execution is not the "unequivocal and decisive act" required to reject UIM coverage.  The Court addresses each of these arguments below.

      <u>First</u>:  Does there need to be a separate rejection form for each policy?  No.  The statute contains no requirement that an insured execute a separate rejection form for each policy.  In fact, *Stemple v. Zurich American Ins. Co.* suggested that one form <u>could</u> apply to multiple policies.[25]  Here, the form is a Kansas rejection form and the Applicable Policy covers vehicles registered or garaged in Kansas.  A predecessor to the Applicable Policy was in effect at the time Atmos executed the rejection, and the form specifically states that it covers any policy or policies in effect at the time of execution.  K.S.A. § 40-284(c) provides that the rejection remains in place for subsequent policies.  There is no need for Atmos to have executed separate rejection forms.

      Plaintiff cites testimony from Defendant's corporate representative in support of his position, arguing that the "best practice" is to collect a rejection for all applicable states for each policy.  But regardless of whether the corporate representative believes this may be a "best practice," it is not what Kansas law requires.  Plaintiff's argument is unpersuasive.

      <u>Second</u>:  Must the rejection form specifically identify a policy and vehicles to which it applies?  No.  Plaintiff claims that Atmos Energy's written rejection was not effective because it does not specifically identify the policy to which it applies and does not list the vehicles it covers.  In support, Plaintiff cites *Stemple.*  In *Stemple*, a company had two policies for a fleet of

---

[25] 584 F. Supp. 2d at 1313.

vehicles.[26]  The company intended to reject UIM excess coverage for both policies (as evidenced by a "Summary Form"), but the rejection form itself only listed one policy—the policy that did not cover the vehicle that was in the accident.[27]  *Stemple* said the intent expressed in the Summary Form was irrelevant, and because both policies weren't listed on the rejection form, the rejection was invalid for the unlisted policy.[28]

*Stemple* is distinguishable.  Here, the rejection form states that it applies "to the policy or policies" in effect at the time the form was executed, and all future renewal policies.  The form does not refer to any particular policy number(s) at all—thereby avoiding the problem addressed in *Stemple* of possibly excluding the policy at issue.  It does not list the vehicles, but the Court does not find that omission significant.  Plaintiff argues that vehicles must be listed because the Kansas Insurance Department's "form" rejection form has a place to list vehicles.  (Notably, though, the model form does not include a section for the policy number.)  But the Kansas Insurance Department in this case stamped Defendant's rejection form (the one used here by Atmos) as being "Approved and Filed Sep. 27, 2007, Sandy Praeger, Commissioner of Insurance."  In *McTaggert v. Liberty Mutual Insurance*,[29] the Kansas Supreme Court found it significant that Liberty Mutual's rejection form was submitted to the Insurance Department and stamped as being "Approved and Filed, Feb. 16, 1982, Fletcher Bell, Comm. of Insurance."

---

[26] *Id.* at 1305.

[27] *Id.* at 1305 –06.

[28] *Id.* at 1313–14.

[29] 983 P.2d at 856.

*McTaggert* upheld a rejection form even though it was different from the sample form provided by the Kansas Insurance Department.[30]

Finally, Plaintiff argues that because Defendant has executed rejection forms for other states (West Virginia and Louisiana) that include policy numbers, Defendant should have included policy numbers on the Kansas form, as well.  But what Defendant does to comply with other states' laws is irrelevant when Kansas law applies here.  The fact that Defendant includes policy numbers on the rejection forms of other states does not require Defendant to do the same to avoid ambiguity in Kansas.

Kansas precedent does not require either that a policy number or vehicles be specifically identified on the rejection form if the policy or policies to which it applies is otherwise apparent. Here, there is no ambiguity or need to individually list policies or vehicles.

<u>Third</u>:  Must the rejection form be incorporated into the Applicable Policy to be valid? No.  The statute does not contain this requirement.[31]  The Kansas Supreme Court has advised that "[o]nce a valid rejection is written, the statute has been complied with."[32]  The rejection need not be referenced in the policy, attached to it, or incorporated into it.[33]  So long as the rejection is written, that is enough.

---

[30] *Id.* at 858.

[31] *Mitchell*, 24 P.3d at 715.

[32] *Id.* at 700.

[33] *Id.* at 701 (observing that nothing in the language of the statute requires the rejection form itself to be "attached to or encompassed within the policy").

Fourth:  Is it sufficient for the rejection form to state that it applies to the "policy or policies" in effect at the time of its execution?  Yes.  As noted above, *Stemple* suggested that a rejection may apply to multiple policies.[34]  Using this broad phrase does not insert ambiguity into the rejection form or otherwise call its validity into question.  Plaintiff argues that the rejection form in *Stemple* purported to apply to "all vehicles" owned by the insured.  This may be correct, but the *Stemple* decision did not rest on whether the rejection form too broadly purported to cover "all vehicles."  Instead, *Stemple* rested on the facts that the rejection form specifically listed one policy number, but not the other, and the "Summary Form" that expressed contrary intent was an invalid rejection of excess UIM limits.[35]  Again, Plaintiff's argument is unpersuasive.

The Kansas rejection form here unambiguously declines all excess UIM coverage for the policy at issue.  Without the $1,000,000 limits in UIM coverage, Plaintiff will take nothing under the UIM policy.[36]  This determination makes summary judgment not only appropriate on Count 1 (Declaratory Judgment), but also Counts 2 and 3 (Breach of Contract and Vexatious Refusal).  Without Declaratory Judgment in Plaintiff's favor, Plaintiff cannot recover on either of his other claims.

---

[34] 584 F. Supp. 2d at 1313.

[35] *Id.* at 1313–14.

[36] *Halsey*, 61 P.3d at 696 ("UIM coverage exists only in cases where the claimant/insured has UIM limits which are greater than the tortfeasor's liability coverage.").

**IT IS THEREFORE ORDERED THAT** Defendant's Motion for Summary Judgment (ECF No. 42) is granted and Plaintiff's Motion for Summary Judgment (Doc. 39) is denied. Judgment shall be entered in favor of Defendant and against Plaintiff.  The case is closed.

IT IS SO ORDERED.

Dated this 18th day of December, 2020, at Kansas City, Kansas.


Teresa J. James
U. S. Magistrate Judge